



POSTED ON WEBSITE
NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>GLENDA S. GOLDEN and<br>JOSHUA M. GOLDEN,<br><br>        Debtors.<br>_____<br><br>ARNOLD CHUNG and<br>JANICE CHUNG,<br><br>        Plaintiffs,<br>v.<br><br>GLENDA S. GOLDEN and<br>JOSHUA M. GOLDEN,<br><br>        Defendants.<br>_____ | Case No. 10-38007-E-7<br><br><br><br><br><br><br><br><br>Adv. Pro. No. 11-2741<br>Docket Control No. KY-1 |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

**MEMORANDUM OPINION AND DECISION**

Arnold Chung and Janice Chung, the Plaintiffs, seek partial summary judgment on their § 523 nondischargeability complaint against Joshua Golden, one of the Defendant-Debtors. Plaintiffs have provided evidence in the form of the Defendant's deposition transcript and various discovery documents. The Plaintiffs' motion for relief looks to find an amount $275,367.97 as nondischargable

in the Defendant's bankruptcy case pursuant to 11 U.S.C. § 523(a)(4) [breach of fiduciary duties for an asserted partnership], only one of several causes of action in the Complaint.

Federal Rule of Civil Procedure Rule 7(b), incorporated by Federal Rule of Bankruptcy Procedure 7007, requires that "The motion must: . . . (B) state with particularity the grounds for seeking the order; and (C) state the relief sought." Properly pleading the grounds with particularity in the motion is not optional, but "must" be done by the movant. It is not for the court to traverse through other pleadings or extensive points and authorities to piece together the basis for movant's motion or the relief actually sought.

The Defendant responds by disputing the form of investment, whether a partnership was formed, the time line of investments, what assets were part of the claimed partnership, and general denials of statements. No evidence was submitted by the Defendant in support of any points.

**FEDERAL COURT JURISDICTION**

Jurisdiction for this Adversary Proceeding and Summary Judgment Motion exists pursuant to 28 U.S.C. §§ 1334 and 157(a), and the referral of bankruptcy cases and all related matters to the bankruptcy judges in this District. ED Cal. Gen Order 182, 223. This Adversary Proceeding is a core matter arising under Title 11, including 11 U.S.C. §§ 523. 28 U.S.C. § 157(b)(2)(I). Proper notice was provided pursuant to Local Bankruptcy Rule 9014-1(f)(1) and opposition was filed by the opposing Defendant.

///

**SUMMARY JUDGMENT STANDARD**

In an adversary proceeding, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), *incorporated by* Fed. R. Bankr. P. 7056. The key inquiry in a motion for summary judgment is whether a genuine issue of material fact remains for trial. Fed. R. Civ. P. 56(c), incorporated by Fed. R. Bankr. P. 7056; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.11[1][b] (3d ed. 2000) ("Moore").

"[A dispute] is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute [over a fact] is 'material' only if it could affect the outcome of the suit under the governing law." *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment bears the burden of showing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To support the assertion that a fact cannot be genuinely disputed, the moving party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A), incorporated by Fed. R. Bankr. P. 7056.

In response to a properly submitted motion for summary judgment, the burden shifts to the nonmoving party to set forth

specific facts showing that there is a genuine dispute for trial. *Barboza*, 545 F.3d at 707 (citing *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002)). The nonmoving party cannot rely on allegations or denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery materials, to show that a dispute exists. *Id.* (citing *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In ruling on a summary judgment motion, the court must view all of the evidence in the light most favorable to the nonmoving party. *Barboza*, 545 F.3d at 707 (citing County of *Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148, 1154 (9th Cir. 2001)). The court "generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Agosto v. INS*, 436 U.S. 748, 756 (1978). "[A]t the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter[,] but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### EVIDENCE PRESENTED BY THE PARTIES

Discovery concluded on June 29, 2012. Dckt. 10. The evidence provided to the court by the Plaintiffs consists of:

1) Accounting records produced by Defendant for Norcal Nutrition, Vision Captured, and Celeswiss, Inc.

2) Deposition transcript of Defendant, Joshua Golden, taken May 21, 2012.

3) Defendant's response to Plaintiffs' Request for Admissions.

No other party declarations or affidavits have been filed with the court in this case.

No evidence was provided in opposition to the Motion for Partial Summary Judgment. The Defendant has asserted that the Plaintiffs have failed to establish that a fiduciary relationship existed between the Plaintiffs and Defendant Joshua M. Golden. Opposition, Dckt. 39. In the Points and Authorities, the Defendant asserts that there are disputed facts, but does not provide evidence of the dispute.

### PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT

As discussed above, the moving party bears the burden of showing the absence of a genuine issue of material fact by citing to particular parts of materials in the record. The Plaintiffs have cited all facts directly to the materials provided by the Defendant or the Defendant's own testimony during deposition.

The burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine dispute for trial. However, the nonmoving party cannot rely on allegations or denials in their pleadings and instead must cite to specific evidence in the record. Even within the undisputed facts section of the Defendant's points and authorities, the Defendant fails to cite to the record in support of his assertions. Within the disputed facts, the Defendant simply disagrees with the Plaintiffs' Separate Statement of Undisputed Facts without providing specific evidence within the evidence to support the disagreement.

To prevail in a summary judgment motion, the moving party must present sufficient evidence to support their entitlement to judgment as a matter of law. The Motion is premised on the court

finding that there exists a partnership or partnerships between the Plaintiffs and Defendant.

The Plaintiffs' motion makes several assertions that presumably are issues the Plaintiffs are looking for the court to review for partial summary judgment. Specifically, in the Points and Authorities, the Plaintiffs claim the following three claims:

    A.    Joshua Golden was a fiduciary of the Chungs.

    B.    The Chungs entrusted with Joshua Golden funds to be held and used for the benefit of the Chungs.

    C.    Joshua Golden misappropriated funds he held on behalf of the Chungs and failed to properly account for such funds.

Based on the evidence presented, no contradicting evidence having been presented by the Defendant, and the court not being asked to assess the credibility of witnesses, the court determines that the following facts are not in material dispute:

| | |
|---|---|
| Joshua Golden first met Arnold and Janice Chung at a Seminar on insurance products in 2005. | Joshua Golden Deposition Transcript ("JGT"), Ex. B, Dckt. 36, 9:4-9 |
| Joshua Golden sold a life insurance policy to Janice Chung in June 2005. | JGT, 9:21-10:5 |
| Joshua Golden had his next business dealings with Arnold and Janice Chung in 2008. The dealings related to a gym project in Virginia. | JGT, 16:12-17:04 |
| The gym project was to provide management consulting services to an operating gym in Virginia. | JGT, 19:1-6 |
| Joshua Golden had never previously provided such consulting services to a gym. | JGT, 19:13-15 |
| Arnold and Janice Chung provided $5,000.00 to Joshua Golden for the gym project. | JGT, 22:11-15 |
| The $5,000.00 for the gym project was for travel expenses for two people to travel to Virginia. | JGT, 27:15-17 |

6

| | |
|---|---|
| No persons traveled to Virginia for the gym project. | JGT, 27:17-19 |
| Joshua Golden did not provide a written accounting to Arnold and Janice Chung for the gym project. | JGT, 23:4-12. |
| Joshua Golden started a video documentary project in October 2007. | JGT, 29:17-22. |
| The first phase of the video documentary was completed in late March 2008. | JGT, 29:22-23 |
| The video documentary project was stopped in August 2009, with approximately 10-12 minutes of footage completed. | JGT, 100:6-11 |
| Arnold and Janice Chung became involved in Joshua Golden's video project in September or October 2008. | JGT, 32:20-33:3 |
| Arnold and Janice Chung ceased their involvement in the video documentary in March 2009. | JGT, 33:4-1 |
| Arnold and Janice Chung invested $22,800.00 with Defendant for the purchase of Celeswiss, Inc. | JGT, 87:2-6 |
| Arnold and Janice Chung invested $35,000.00 with Defendant for funding Norcal Nutrition. | JGT, 87:11-14 |
| Arnold and Janice Chung invested $5,000.00 with Defendant for Norcal Nutrition. | JGT, 87:15-18 |
| Norcal Nutrition opened in October 2009 and ceased operation ("kicked out") end of June 2011. | JGT, 67: 20-22 |
| Monies obtained for the video documentary was used to open Norcal Nutrition. | JGT, 99: 24-25, 100: 1-3 |
| Arnold and Janice Chung invested $120,000.00 with Defendant for Vision Captured in March 2009. | JGT, 51:2-9; 87:19 - 88:13 |
| Arnold and Janice Chung incurred obligations for credit cards ("business credit cards") used by Joshua Golden in connection with their transactions with Joshua Golden. | JGT, p. 88 - 93 |
| Joshua Golden made a charge on the business credit cards at Placer Tactical to purchase rifle parts for assembly and resale; Defendant never sold any rifles. | JGT, p. 137:19-138:25 |
| Joshua Golden made charges for personal transactions on business credit cards. | JGT, 131-132, 135, 137, 143, 147, 149; Request For Admissions, Ex. C, Dckt. 36, #42 |

| | |
|---|---|
| No persons traveled to Virginia for the gym project. | JGT, 27:17-19 |
| Joshua Golden did not provide a written accounting to Arnold and Janice Chung for the gym project. | JGT, 23:4-12. |
| Joshua Golden started a video documentary project in October 2007. | JGT, 29:17-22. |
| The first phase of the video documentary was completed in late March 2008. | JGT, 29:22-23 |
| The video documentary project was stopped in August 2009, with approximately 10-12 minutes of footage completed. | JGT, 100:6-11 |
| Arnold and Janice Chung became involved in Joshua Golden's video project in September or October 2008. | JGT, 32:20-33:3 |
| Arnold and Janice Chung ceased their involvement in the video documentary in March 2009. | JGT, 33:4-1 |
| Arnold and Janice Chung invested $22,800.00 with Defendant for the purchase of Celeswiss, Inc. | JGT, 87:2-6 |
| Arnold and Janice Chung invested $35,000.00 with Defendant for funding Norcal Nutrition. | JGT, 87:11-14 |
| Arnold and Janice Chung invested $5,000.00 with Defendant for Norcal Nutrition. | JGT, 87:15-18 |
| Norcal Nutrition opened in October 2009 and ceased operation ("kicked out") end of June 2011. | JGT, 67: 20-22 |
| Monies obtained for the video documentary was used to open Norcal Nutrition. | JGT, 99: 24-25, 100: 1-3 |
| Arnold and Janice Chung invested $120,000.00 with Defendant for Vision Captured in March 2009. | JGT, 51:2-9; 87:19 - 88:13 |
| Arnold and Janice Chung incurred obligations for credit cards ("business credit cards") used by Joshua Golden in connection with their transactions with Joshua Golden. | JGT, p. 88 - 93 |
| Joshua Golden made a charge on the business credit cards at Placer Tactical to purchase rifle parts for assembly and resale; Defendant never sold any rifles. | JGT, p. 137:19-138:25 |
| Joshua Golden made charges for personal transactions on business credit cards. | JGT, 131-132, 135, 137, 143, 147, 149; Request For Admissions, Ex. C, Dckt. 36, #42 |

**CLAIM 1 - Defendant was a Fiduciary of the Plaintiffs Based on a Partnership Existing Between the Parties**

To support this claim, the Plaintiffs seek to demonstrate that the Chungs and Joshua Golden were partners, and by operation of California partnership law, owed each other fiduciary duties along with the duties of loyalty and care. The Ninth Circuit has held that under California law, partners are trustees with respect to partnership property for the purpose of section 523(a)(4). *Ragsdale v. Haller*, 780 F.2d 794, 795-96 (9th Cir. 1986). Plaintiffs cite California Corporations Code § 16202(a), "the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." The Plaintiffs then cite to two admissions: (1) Defendant owned a business with Mr. Chung; (2) Intent to operate a business for profit with Mr. Chung.

However, the Plaintiffs have failed to address the issues raised by subsection (c) of California Corporations Code § 16202, which addresses how to determine if a partnership has been formed. Subsection (c) of this Corporations Code section provides,

> (1) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the use of the property.
>
> (2) The sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived.

Cal. Corp. Code § 16202(c)(1), (2).

Plaintiffs argue that there is a presumption of a partnership if profits are shared arising under California Corporations Code

8

§ 16202(c)(3), which provides,

> (3) A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received for any of the following reasons:
>
> (A) In payment of a debt by installments or otherwise.
>
> (B) In payment for services as an independent contractor or of wages or other compensation to an employee.
>
> (C) In payment of rent.
>
> (D) In payment of an annuity or other retirement benefit to a beneficiary, representative, or designee of a deceased or retired partner.
>
> (E) In payment of interest or other charge on a loan, even if the amount of payment varies with the profits of the business, including a direct or indirect present or future ownership of the collateral, or rights to income, proceeds, or increase in value derived from the collateral.
>
> (F) In payment for the sale of the goodwill of a business or other property by installments or otherwise.

This presumption is rebuttable. 4-24 BALLANTINE AND STERLING CALIFORNIA CORPORATION LAWS § 616.

What the court does not have in front of it is undisputed evidence that profits were shared, and if shared, that it was not for one of the reasons stated in subparagraph (c)(3), including payment of debt, interest or charge on a loan (including right to income, proceeds, or increase in value from the collateral). "The presumption of partnership from an agreement to share profits, however, will not alone sustain a finding that a relationship is a partnership." *Id.*, citing *Bank of California v. Connolly*, 36 Cal. App. 3rd 350 (1973), decided under the pre-1977 Uniform Partnership Act provisions enacted by the California Legislature.

9

Further, if the person does not have the right to manage or share in the management, participation in profits may not alone make that person a partner. BALLANTINE AND STERLING CALIFORNIA CORPORATION LAWS § 616[2], citing pre-1977 Uniform Partnership Act cases. Creation of a partnership is something more than one person providing money to another person.

As discussed in this section in BALLANTINE AND STERLING, "This intention [to form a partnership] must be ascertained from the nation of the relationship agreed upon, rather than from the designation the parties have given it. The objective terms of the agreement, and not the subjective or undisclosed intention of the parties, are controlling." *Id.*, § 616[1]. When a person asserts that he or she is a partner with the right to share in profits, there is also an implicit obligation to bear losses of the partnership (with the exception of it being a limited partnership). *Id.*, § 616[4].

The Plaintiffs assert there was one continuous partnership, however no evidence has been provided as to the interests being acquired in the six asserted investments. The court has been hard pressed to follow what was being acquired and for what purpose. An example is the acquisition of Celeswiss, Inc. Presumably, this was a corporation (Inc.) and as such, acquisition was of common stock. It is unclear from the evidence presented if this was a partnership or simply a joint undertaking, and how it relates to the "Virginia Gym" investment.

Starkly absent, notwithstanding the 99 pages of discovery responses provided as the evidence in support of the Motion, is any testimony of the Plaintiffs stating that they were entering into

10

partnerships with the Defendant.  There is no evidence as to how and what the Plaintiffs did in connection with this partnership, how they accounted for the partnership interests and liabilities on their tax returns and financial statements, and what they did to assert their rights and manage their obligations as partners.

The evidence presented is not clear that there was a partnership, whether formal or informal, between these parties.  To the extent that there could be a rebuttable presumption, the Plaintiff has not presented the court with evidence of a right to profits of the type not excluded from the presumption under California Corporations Code § 16202(c)(3).  The court cannot determine from the evidence presented what relationship exited, which endeavors, if any, were partnerships, and where there is one massive partnership as Plaintiffs allege.  These parties have engaged in significant, multiple financial transactions, which appear to have been done on a handshake and nod of the head.  The credibility of witnesses and proper documentation of the transactions are necessary for this court to make a determination as to the relationship or relationships which existed and exist between the parties.

**CLAIM 2 - Defendant was Entrusted With Funds to be Held and Used in the Partnership for the Benefit of the Plaintiffs**

The Plaintiffs have failed to provide a concise argument to support this claim.  It appears to derive from the claim of partnership.  However, the phrasing of the claim appears to imply that the Defendant was to invest funds on behalf of the Plaintiffs.  This appears to contradict the claim that the parties were partners in a partnership since funds would have necessarily have been

entrusted for the benefit of the partnership, were it a partnership.

**CLAIM 3 - Defendant Misappropriated Funds**

The Plaintiffs have stated that the Defendant has misappropriated funds. Plaintiffs point to the documents provided as an inadequate accounting of how the partnership funds were spent. Presuming Plaintiffs prove there was a partnership created by law, in California the Uniform Partnership Act of 1994 controls the rights and responsibilities of the partners.

This Act includes California Corporations Code § 16403, which states "a partnership shall keep its books and records, if any, in writing..." The Plaintiffs had a right during the partnership to inspect the books and any information reasonably required for the partner's rights and duties under the partnership agreement or this chapter. So there was no requirement for either partner to maintain the books of the partnership.

Plaintiffs assert that Defendant's failure to provide a complete accounting for all funds spent in the manner suggested imputes liability for the full amount invested. Evidence in the deposition and motions suggest that at least some of the transactions appear to be investments in the skill of the Defendant (researching, Virginia Gym, video project). Others appear to be possible investments of or financing by the Plaintiffs, such as the purchase of Celeswiss, Inc. To what extent Defendant was obligated to account for monies spent is unclear. Presumably Plaintiffs would not dispute that $22,800.00 was spent to acquire Celeswiss, Inc. and was paid to a party for that interest.

These issues are important as the Plaintiffs pray the court

hold the entire amount invested or spent on credit during the alleged extended business relationship with the Defendant nondischargable. A violation of the obligation of good faith and fair dealing would allow for every presumption to be made against the Defendant. Testimony by the Defendant indicates that of the clearly personal purchases described, he repaid those "loans" from his own personal account. Cal. Corp. Code § 16404(3)(f). Neither party has provided evidence to support the exact amounts and dates personal items were charged, repaid, or not repaid from personal accounts. Furthermore, no evidence was submitted about any agreements between the "partners" as to compensation, responsibilities, etc.

While Plaintiffs argue that under the principles enunciated in *Otto v. Niles (In re Niles)*, 106 F.3d 1465 (9th Cir. 1997), once the use of entrusted money is shown, then the burden shifts to the fiduciary to show that the use was not improper. However, this claim is premised on there being a partnership, which the court cannot determine on this summary judgment motion based on the evidence presented.

**CONCLUSION**

In an adversary proceeding, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), *incorporated by* Fed. R. Bankr. P. 7056. The Plaintiffs have submitted evidence demonstrating there is no genuine dispute as to any material fact. The Defendant's denials unsupported by evidence are insufficient to bring any of the facts into dispute.

However, Plaintiffs have failed to provide sufficient facts to entitle them to judgment as a matter of law. The court cannot determine, on a motion for summary judgment with the evidence submitted whether a partnership or partnerships existed, and if so, to what extent and on what terms. The motion for summary judgment is denied.

The court does find that the facts stated above are not in material dispute and are deemed determined for all purposes in this adversary proceeding pursuant to Federal Rule of Civil Procedure 56(g) and Federal Rule of Bankruptcy Procedure 7056.

The motion for summary judgment is denied, and the court makes the above determination of summary adjudication.

The court shall issue an order consistent with this Ruling. This Memorandum Opinion and Decision constitutes the court's Findings of Fact and Conclusions of Law.

Dated: March 1, 2013

RONALD H. SARGIS, Judge
United States Bankruptcy Court

**CERTIFICATE OF MAILING**

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that the attached document(s) was served by mail to the following entities listed at the address(es) shown below:

Service List:

Glenda Golden
1267 Teal Hollow Dr N
Lincoln, CA 95648

Joshua Golden
1267 Teal Hollow Dr N
Lincoln, CA 95648

Scott Hughes
1100 Melody Ln #207
Roseville, CA 95678

Nicholas Lazzarini
1930 Del Paso Rd #121
Sacramento, CA 95834

Peter Macaluso
7311 Greenhaven Dr #100
Sacramento, CA 95831

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

John Roberts
PO Box 1506
Placerville, CA 95667

Kenrick Young
1930 Del Paso Rd, Suite 121
Sacramento, CA 95834

DATE: 3-04-13

*Kamee Vang*
Deputy Clerk

Kamee Vang